**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND**

| | |
|---|---|
| IN RE: | |
| **GLENNA KAY PLYBON** | Case No. 11-10146 |

| | |
|---|---|
| **WOODLAND OAKS MANOR, LLC** | **PLAINTIFF** |
| vs. | AP No. 11-1089 |
| **GLENNA KAY PLYBON** | **DEFENDANT** |

### MEMORANDUM OPINION

On March 17, 2011, Glenna Kay Plybon filed a voluntary petition with the United States Bankruptcy Court of the Eastern District of Kentucky. On the date the bankruptcy petition was filed, Defendant was indebted to Woodland Oaks Manor, LLC in the amount of $47,692.02, pursuant to an order of judgment entered by the Boyd Circuit Court on February 14, 2011. Woodland commenced this adversary proceeding pursuant to § 523(a)(2)(A) and (a)(4) of title 11 of the United States Code alleging the judgment awarded by the state court is not subject to discharge.

Defendant did not answer the adversary complaint and Plaintiff moved for entry of a judgment by default. In response, an order was entered scheduling at hearing and requiring Plaintiff to produce evidence sufficient to meet its burden of proof. The order provided, "judgment will enter on the establishment of all necessary elements of proof. The court will not grant relief unsupported by law simply because the defendant did not oppose the adversary proceeding. *In re Talbert*, 268 B.R. 811, 813 n.2 (Bankr. W.D. Mich. 2001)."

A hearing was held on October 20, 2011. Plaintiff filed a brief in support of the nondischargeability of the debt and associated proof on January 17, 2012. (Doc. 20).

The record establishes Plaintiff has met the burden of proof[1] and supports the following findings of fact:

1. The debt at issue arose out of charges incurred by Defendant's husband, Roger Plybon, while he was a resident at Woodland Oaks Manor, LLC from December 3, 2009, through September 22, 2010.

2. Defendant handles the financial affairs of her husband which include receipt of social security benefits.

3. Prior to Mr. Plybon's admission to Woodland, Defendant signed an Admissions Agreement which set forth her duties and obligations as the Responsible Party. The Admissions Agreement included the following in the definition of the term Responsible Party:

> The Responsible Party's financial responsibilities are limited to the amount of the funds received or held by the Responsible Party or Agent on behalf of the Resident. The Responsible Party does not assume responsibility for payment of the cost of the Resident's care out of the Responsible Party's personal funds, unless otherwise indicated and acknowledged in this agreement. To the extent legally permitted, the Responsible Party is contractually bound by the terms of this Agreement and may become liable for failure to perform duties under this Agreement.

4. Defendant signed the Admissions Agreement in several locations, one of which is under a section labeled FINANCIAL CLASSIFICATION which states, "Resident must pay a co-insurance amount of $133.50 per day for each day after the 20th and through the 100th day of a skilled nursing care stay…" The section concludes with the explanation if the Resident did not qualify for Medicare Part A benefits or the benefits are cancelled or discontinued the Resident or Responsible Party are liable for payment of all financial obligations for the Resident.

5. The page final page of the Admissions Agreement contains an acknowledgement that a Woodland representative reviewed the Resident's rights and responsibilities with the Resident and the Responsible Party both orally and in writing. Defendant signed the final page of the Admissions Agreement.

---

[1] Plaintiff voluntarily withdrew the claim based on 11 U.S.C. § 523(a)(2)(A). Accordingly, the findings and conclusions are limited to the claim based on 11 U.S.C. § 523(a)(4). See Brief on Behalf of Woodland Oaks Manor, LLC, Doc. 20, p. 2.

6. The Admissions Agreement required Defendant to file a Medicaid application on behalf of her husband to cover the cost of his stay at Woodland.

7. Defendant filed a Medicaid application in March or April 2010, but failed to provide all the information needed to approve Mr. Plybon's Medicaid application. The Medicaid application was denied.

8. Defendant was notified of the Medicaid denial.

9. Defendant did not make any payments to Woodland subsequent to Mr. Plybon's admission on December 3, 2009.

10. On March 3, 2010, Woodland instituted discharge proceedings against Mr. Plybon for non-payment.

11. Defendant appealed the discharge and following a July 21, 2010, hearing before an administrative law judge, the discharge was affirmed by entry of detailed findings of fact, conclusions of law and a final order on August 6, 2010.

12. Mr. Plybon was discharged from Woodland on September 22, 2010.

13. On December 13, 2010, Woodland instituted legal proceedings against Defendant in the Boyd Circuit Court for payment of the outstanding balance owed on Mr. Plybon's account. The two count complaint sought damages for Defendant's breach of the Admission Agreement and for Defendant's failure to meet her individual liability to Woodland as Mr. Plybon's spouse.

14. An order awarding judgment on Defendant's default was entered on February 14, 2011, in the amount of $46,976.02, plus interest at the rate of 12%, plus costs and fees in the amount of $761.00.

15. On March 17, 2011, Defendant filed a voluntary petition with the United States Bankruptcy Court of the Eastern District of Kentucky under Chapter 7 of title 11.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue in the Eastern District of Kentucky

was proper as of the Petition Date and continues to be proper under 28 U.S.C. § 1408.

A debt is non-dischargeable pursuant to § 523(a)(4) if it is incurred by fraud or defalcation while acting in a fiduciary capacity, by embezzlement, or by larceny.  11 U.S.C § 523(a)(4).  Woodland contends the judgment debt is nondischargeable in bankruptcy because of defalcation by Defendant while acting in a fiduciary capacity.

Defalcation is the willful neglect of one's duty, even if not accompanied by fraud or embezzlement.  *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937).  In the Sixth Circuit defalcation encompasses embezzlement and misappropriation by a fiduciary, as well as the failure to properly account for such funds.  *In re Patel*, 565 F.3d 963 (6th Cir. 2009) quoting *In re Blaszak*, 397 F.3d 386, 390 (6th Cir. 2005) and discussing Judge Learned Hand's definition of defalcation found in *Central Hanover Bank*.  Defalcation will not result from mere negligence or a mistake of fact, the debtor "must have been objectively reckless in failing to properly account for or allocate funds."  *Patel*, 565 F.3d at 970 citing *In re Johnson*, 691 F.2d 249, 257 (6th Cir. 1982).

Requirements for proof of defalcation under 11 U.S.C. § 523(a)(4) are: (1) existence of a fiduciary relationship, (2) breach of the fiduciary relationship, and (3) a resulting loss.  *Blaszak*, 397 F.3d at 390 citing *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178-79 (6th Cir. 1997).  The proof of an exception to discharge must be established by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279 (1991).

For purposes of § 523(a)(4) the question of who is a fiduciary is determined by federal law.  *Blaszak*, 397 F.3d at 390 citing *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir. 1982) (federal law controls who is a fiduciary under § 523(a)(4), while "state law is important in determining when a trust relationship exists.").  The term "fiduciary capacity" in § 523(a)(4) is more narrowly construed than in other circumstances.  *Blaszak*, 397 F.3d at 391; *see also In re Garver*, 116 F.3d 176 (subsection 523(a)(4) applies to trustees who misappropriate funds held in trust; not to those who fail to meet an obligation under a common

4

law fiduciary relationship).

Under the terms of the Admissions Agreement, Defendant, as the Responsible Party, was contractually bound by the terms of the Admissions Agreement to take the steps required to obtain Medicaid coverage for her husband thereby paying for his care and lodging at Woodland. Defendant acknowledged her obligations to Woodland and accepted her responsibilities when she signed the Admission Agreement in several locations. Defendant also contractually accepted personal responsibility for her husband's expenses in the event Medicaid did not cover the expenses.

Only Defendant, as Mr. Plybon's spouse, was in the position to apply for his Medicaid coverage and had access to his social security checks. The evidence shows Defendant delayed filing the application for the Medicaid benefits and when the application was filed, it was incomplete. The failure to provide the required documentation led to the denial of Medicaid benefits for Mr. Plybon. Defendant's failure to obtain the Medicaid benefits and the subsequent failure to meet the financial obligations for Mr. Plybon's care were a breach of her obligations under the Admissions Agreement as the party responsible for Mr. Plyon's financial assets and liabilities. Defendant's breach caused the losses suffered by Woodland.

Based on the evidence of record, the debt in the amount of $47,692.02, owed by Defendant Glenna Kay Plybon to Woodland Oaks Manor is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

The foregoing constitutes the findings of fact and conclusions of law. In reaching the conclusions, all evidence and exhibits were considered, regardless of whether or not specifically referenced herein. A separate order shall be entered accordingly.

Copies to:
John S. Harrison, Esq.
Glenna Kay Plybon, Defendant *pro se*

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge
Dated: Friday, March 09, 2012
(jms)**